**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**CAESAR WHITE, JR.,**

      **Plaintiff,**

**vs.**                               **Case No. 4:06cv136-RH/WCS**

**STATE OF FLORIDA,
DEPARTMENT OF TRANSPORTATION,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Pending is Defendant's motion for summary judgment, doc. 58, and Plaintiff's cross-motion for summary judgment, doc. 59.  The parties were advised of their respective obligations in responding to the motions, doc. 60, and responses have been filed.  Docs. 61, 62.  Defendant separately filed a statement of facts, doc. 64, which broadly disputes the facts presented in Plaintiff's statement.

This case concerns Plaintiff's allegation that he applied for a position of Law Enforcement Compliance Officer with the Florida Department of Transportation, and was not hired due to racial discrimination.  First Amended Complaint, doc. 23.  Plaintiff seeks injunctive and monetary relief against the Department.  *Id.*, at 8.

**I.      Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477

U.S. at 324, 106 S. Ct. at 2553.

Plaintiff may move for summary judgment, with or without supporting affidavits,

upon all or any part of his claim.  Fed. R. Civ. P. 56(a).  Summary judgment shall be

granted in favor of Plaintiff "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  "A claimant is entitled to summary judgment only

when no genuine issue of material fact exists, the papers on the motion demonstrate

the right to relief, and every one of the defenses asserted legally are insufficient."  10B

CHARLES A. WRIGHT, ARTHUR R.  MILLER, & MARY K. KANE, FEDERAL PRACTICE AND

PROCEDURE § 2734 (1983).

## II.    The relevant Rule 56(e) evidence

Plaintiff filed an application with the Department on or about April 16, 2004, for

the position of Motor Carrier Compliance Officer [hereinafter "MCCO"].  Doc. 58.  This

position is a law enforcement officer and the Department's procedures require an

applicant for MCCO to submit an "initial application," and then a conditional offer of

employment is extended to the applicant before he or she is required to submit to a

polygraph examination.  Doc. 58, ex. A, p. 1 (doc. 58-2, p. 1).[1]  After an applicant is

---

[1] All references to exhibits contain the paper copy and page number, followed by
a reference (in parenthesis) to the corresponding document and page in the electronic
docket.  Both citations are referenced as a *pro se* litigant will not have access to the
court's electronic docket.

administered a polygraph test, the report is reviewed "to determine whether the applicant is qualified."  Doc. 58, ex. A, p. 1 (doc. 58-2, p. 1).  One of those persons involved in the hiring decision process, Major Vicki Cutcliffe, presented an affidavit advising:

> Although sometimes an applicant may indicate information in his initial application which may disqualify him or her, the procedure described above is always strictly followed with all applicants without exception.  Part of the reason for this is that sometimes additional information, not directly apparent from the initial application, may be revealed in the polygraph examination which would need to be taken into account.

Doc. 58, ex. A, p. 1 (doc. 58-2, p. 1); *see also* attachment 19 to ex. A (doc. 58-2, p. 53).

When Plaintiff submitted his application on April 16th, he "indicated his race on the initial application, and even submitted a picture of himself prior to the polygraph, so it is false to conclude that" the Department "was unaware" of Plaintiff's race.  Doc. 58, ex. A, p. 1 (doc. 58-2, p. 1); *see also* attachments 1 and 2 to ex. A (doc. 58-2, pp. 13, 19).  Plaintiff's photograph is visible on his supplemental application, dated May 13, 2004.  Plaintiff's ex. F (doc. 59-3, pp. 25, 31).  Moreover, the Department's "recruitment office asked [Plaintiff] to submit an application, because it active[ly] seeks to recruit qualified minorities for its law enforcement officer positions."  Doc. 58, ex. A, p. 1-2 (doc. 58-2, p. 1-2); *see also* attachment 1 to ex. A.

The Department was also aware prior to the polygraph of Plaintiff's past disciplinary issues.  Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2).  In particular, Plaintiff stated in his written employment application that he was "dropped from" the Mississippi Highway Patrol School because it "was said that [Plaintiff] didn't have the right attitude to be a

state trooper."  Doc. 56, ex. A, p. 7 (doc. 58-2, p. 7); *see also* attachment 2 to ex. A

(doc. 58-2, p. 20); Plaintiff's ex. E (doc. 59-3, p. 20).

Nevertheless, following the procedure above, Plaintiff was given a conditional

offer of employment and then administered the polygraph examination.  Doc. 58, ex. A,

p. 2 (doc. 58-2, p. 2); attachment 13 to ex. A (doc. 58-2, p. 34); Plaintiff's Ex. D (doc. 59-

3, p. 16).  The employment offer was "specifically contingent on . . . the successful

completion to the satisfaction of the Department, of a polygraph examination, among

other examinations."  Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2).  Indeed, the offer itself

contains that contingency and advised that upon "satisfactory completion of [the

specified phases[2] of examinations], you may be offered a position as a Motor Carrier

Compliance Officer . . . "  Attachment 13 to ex. A (Doc. 58-2, p. 34).

Plaintiff was administered the polygraph examination on July 28, 2004.  Doc. 58,

ex. A, p. 2 (doc. 58-2, p. 2).  During the polygraph examination, Plaintiff acknowledged

that he "had been dismissed from the Highway Patrol School for Mississippi because

they said he did not have the right attitude to be a trooper."  Doc. 58, ex. A, p. 2 (doc.

58-2, p. 2).  Plaintiff further indicated during the exam that while in the United States

Marine Corps, "he had three Article 15s and one court martial, all relating to disobeying

lawful orders."  Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2).

---

[2] The letter states that after successful completion of the Polygraph Examination, the application would be "notified when and where to report for you Psychological Screening, Visual Examination, Medical Examination (including Drug Screening) and Oral Interview."  Attachment 13 to ex. A (doc. 58-2, p. 34).  There is no evidence that Plaintiff proceeded beyond the Polygraph phase.

After review of Plaintiff's answers and the results of the examination,[3] the Department determined that Plaintiff "should be disqualified."  Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2).  The decision was made by Lieutenant Colonel David Binder and Major Vicki Cutcliffe.  Doc. 58, ex. B (doc. 58-3, p. 1).  The Department "maintains a policy which provides an Automatic Disqualification List" and contends that numbers 18 and 23 of the "Automatic Disqualification List" were applicable to Plaintiff.  Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2).  Specifically number 18 on the list provides: "Other factors relating to work history, compliance with law and similar job-related areas may be considered in evaluating the applicant's fitness for employment."  Doc. 58, p. 2; doc. 58, ex. A; attachment 18 (doc. 58-2, p. 51).  A second provision, number 23, provides: "Disciplinary action in prior employment, the military or educational institutions for behavior that would be either a criminal act or other major violation of Florida Department of Transportation disciplinary standards will be a basis for evaluation."  Doc. 58, p. 2; doc. 58, ex. A; attachment 18 (doc. 58-2, p. 51).  The Department asserts race was "absolutely not a factor in the determination to disqualify [Plaintiff's] application." Doc. 58, ex. A, p. 2 (doc. 58-2, p. 2); doc. 58, ex. B, pp. 1-2 (doc. 58-3, pp. 1-2).  The Department presents that the decision to not hire Plaintiff was solely due to its hiring policies and the applicability of the disqualification list to Plaintiff's work history.  Plaintiff signed a document as acknowledging he understood the conditions which would render him disqualified for the MCCO position.  Attachment 18 to ex. A (doc. 58-2, p. 58).

---

[3] The results revealed Plaintiff was truthful during the polygraph and had no reactions indicative of deception.  Attachment 15 to ex. A (doc. 58-2, p. 41).

Plaintiff was not the only one disqualified due to his work history.  Doc. 58, p. 5; ex. A; ex. B.  Sixty applicants were disqualified for that reason in 2004.  Doc. 58, ex. C (doc. 58-4, p. 7).  Unqualified applicants are dismissed regardless of race or other classification.  *Id.*  Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations which was dismissed upon a finding that "there is no reasonable cause to believe that an unlawful employment practice occurred."  Doc. 58, ex. C (doc. 58-4, pp. 1, 4).  During the Commission's investigation, there was evidence that in 2004, of the 60 applicants who were disqualified due to work history, 26 were White, 25 were Black, 7 were Hispanic, and 2 were "Other."  Doc. 58, ex. C (doc. 58-4, p. 7).  Additionally, 3 men (1 Hispanic and 2 Whites) were disqualified based on problems in military background.  *Id.*

Part of the basis of Plaintiff's charge of discrimination was that he was not timely notified that he was not hired for the MCCO positon.  Plaintiff's Ex. G (doc. 59-4, p. 1).  The Department acknowledged that Plaintiff was "not informed in a timely fashion of his status in the selection process."  Plaintiff's ex. L (doc. 59-4, p. 9).  The Department explained:

> Upon Mr. White being disqualified after the polygraph phase, his file was inadvertently placed in the stack of completed files.  Therefore, he did not receive the standard disqualifying letter as he should have.  Once it was brought to my attention that he had not been notified, [Maj. Vicki Cutcliffe] instructed a letter go out as soon as possible.  The recruitment staff sent Mr. White the proper letter on April 20, 2005, which stated he was disqualified based upon "Polygraph Staff Review."

*Id.; see also* Plaintiff's ex. Q (doc. 59-4, p. 27).  Major Cutcliffe noted again that Plaintiff did "not fail the polygraph in the sense that he lied during the examination."  Plaintiff's ex. L (doc. 59-4, p. 9).  "By all accounts, [Plaintiff] demonstrated no deception or

deception techniques during the test."  *Id.*  She explained that Plaintiff "did not pass the staff review of the polygraph itself, particularly the admissions and/or statements given by [Plaintiff] during the exam."  *Id.*

## III.   Analysis

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (1988).  Plaintiff bears the burden of proving that Defendant intentionally discriminated against him because of his race.  Cooper v. Southern Co., 390 F.3d 695, 723-724 (11th Cir. 2004), *citing* Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997).  To do so, Plaintiff may use either "direct or indirect evidence."  In most Title VII cases, "direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-45, 36 L.Ed.2d 668 (1973)."  Holifield v. Reno, 115 F.3d at 1562. "Under McDonnell Douglas, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job."  *Id.* (citations omitted).

Defendants contend that Plaintiff fails to demonstrate a *prima facie* case of discrimination because he cannot meet the third and fourth elements of the claim.  Doc.

58, pp. 3-4.  Defendants argue that Plaintiff was not qualified for the job and that he was

treated the same as similarly situated persons outside his racial classification.  *Id.*, at 4.

Plaintiff's prior work history was considered and the fact that he was dismissed

from the Mississippi Highway Patrol because he "did not possess the right attitude to be

a trooper" was considered a disqualifying factor.  Plaintiff's discipline while in the

Marines was also considered as disqualifying, in particular because it was handed down

for disobeying lawful orders as a United States Marine.  Those are considerations

properly made under factors of "work history" and "disciplinary action in prior

employment, the military" for actions that would be a "major violation of . . . disciplinary

standards . . . ."  Those two histories provide a valid basis for not wishing to hire an

applicant into a law enforcement position.  Another state's consideration that a trainee

should be dismissed from a program is one that may properly be considered by officials

in Florida.  That Plaintiff was disciplined for failing to follow an order in the military is

also a significant consideration for one seeking a career as a law enforcement officer.

The policies contained in the Automatic Disqualification List provide for a fair and level

playing field and there is no evidence that Plaintiff's prior history was considered in a

discriminatory manner.  Indeed, the evidence in this case suggests that Plaintiff was

treated the same as others from different racial groups.  Plaintiff was not discriminated

against on the basis of his race.

Plaintiff has argued that the Defendant's reasoning is pretextual, *see doc. 59, p.

6,* but Plaintiff has failed to show that he was qualified or that others were treated more

favorably.  Plaintiff does not dispute the facts concerning his military discipline or his

termination from the highway patrol school.  Thus, Plaintiff has not demonstrated a

*prima facie* case of discrimination.  That Plaintiff was not immediately notified of his disqualification carries little weight since he proceeded no further in the process beyond his polygraph.  Furthermore, failing to not timely notify an applicant of a hiring decision, without more, is not a constitutional violation.

Plaintiff is also clearly wrong when he argues his race was not apparent until the polygraph test was administered in July, 2004.  Plaintiff indicated his race and attached his photograph to his application in May, 2004.  That assertion lacks merit and is frivolous.  Furthermore, the fact that Plaintiff's initial application may have disclosed that Plaintiff was unqualified for the position, but he was still allowed to proceed a short way through the application process (through the polygraph), does not show that he was subject to discrimination.  Rather, Plaintiff was provided more consideration than was necessary, considering his background and the position sought.

Defendant's motion for summary judgment, doc. 58, should be granted as Plaintiff has failed to demonstrate a *prima facie* case of racial discrimination when the Defendant did not hire him.  Plaintiff's cross motion for summary judgment, doc. 59, should be denied.

## IV.   Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for summary judgment, doc. 59, be **DENIED** and that Defendant's motion for summary

judgment, doc. 58, be **GRANTED** and the Clerk of Court be directed to enter judgment

in Defendant's favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 25, 2008.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**